## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ELTON COWART**                                    **CIVIL ACTION**

**VERSUS**                                          **NO. 05-2780**

**N. BURL CAIN, WARDEN**                            **SECTION "I" (6)**

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).  Accordingly, it is recommended that the petition be **DENIED WITH PREJUDICE.**

## I.  PROCEDURAL HISTORY[1]

On October 7, 1999, the Jefferson Parish grand jury indicted petitioner, Elton Cowart, on a charge of first degree murder, in violation of LSA-R.S. 14:30.  Petitioner was arraigned and pled not guilty on October 13, 1999.  He filed motions to suppress statements and identification, which were denied on June 19, 2000.

On November 27, 28, and 29, 2000, the case was tried before a 12-member jury, which unanimously found petitioner guilty as charged.  On December 1, 2000, the jurors were unable to reach a unanimous verdict during the penalty phase.  On February 12, 2001, the trial court sentenced petitioner to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.

On March 26, 2002, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence, but remanded the case for the trial court to provide notice to petitioner with respect to the prescriptive period for obtaining post-conviction relief. *State v. Cowart*, 815 So.2d 275 (La. App. 5 Cir. 2002).  Approximately a year later, on May 9, 2003, the Louisiana Supreme Court denied petitioner's writ application, thereby rendering his conviction and sentence final.  *State v. Cowart*, 843 So.2d 387 (La. 2003).

On January 12, 2004, petitioner filed an application for post-conviction relief

---

[1]A portion of the procedural history was taken from the Louisiana Fifth Circuit Court of Appeal's decision, *State v. Cowart,* 815 So.2d 275, 278 (La. App. 5 Cir. 2002).

with the state district court.[2]  Petitioner's efforts in this regard culminated on May 20, 2005, when the Louisiana Supreme Court denied his writ application.  *State ex rel. Cowart v. State*, 902 So.2d 1046 (La. 2005).

On June 17, 2005, petitioner filed the instant petition for writ of habeas corpus, raising the following claims:  1) The grand jury which indicted him was unconstitutionally selected in a racially discriminatory manner; 2) counsel was unconstitutionally ineffective due to his failure to file a motion to quash the grand jury indictment on the ground that members of the grand jury were unconstitutionally selected; 3) the grand jury indictment was "facially defective" because it did not set forth each essential element of the crime with which petitioner was charged; 4) the trial court erred in failing to suppress the photographic lineup as unduly suggestive; 5) the trial court erred in allowing Deputy Ralph Sacks to offer inadmissible hearsay testimony; 6) the trial court erred in not allowing petitioner to withdraw his alibi statement; and, 7) the evidence was insufficient to support petitioner's first degree murder conviction.  The State, in its response, concedes that the instant action is timely and that petitioner has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).[3]  Accordingly, this court shall review the pertinent facts, then proceed to address the merits of petitioner's claims.

---

[2]*See* State rec., vol. 5 of 10, tab 4.

[3]*See* Federal rec., doc. # 5, p. 3.

**II.  FACTS**[4]

At about 12:40 a.m. on July 31, 1999, Larrilynn Jones was in her apartment at 948 Beechgrove Boulevard in Jefferson Parish.  She was sorting laundry when her puppy went to the window and started barking.  Ms. Jones looked outside and saw three men walking down the sidewalk outside of her window.  She recognized one of the men, the defendant, as Elton, a man she had known for approximately four years.

After viewing the three men, Jones proceeded to pick up her puppy, put him in the laundry basket with the dirty clothes, and go to the apartment complex's laundry room.  After she put her clothes in the washing machine, she took her dog to a recreational area near the laundry room.  While she was playing with her dog in the recreational area, she saw Darien Burse getting out of his van and walking toward Building 917.  Ms. Jones was near Building 921 when she saw him. She decided to go over and speak with Mr. Burse because he had been a friend of hers before she moved to Beechgrove Apartments.  She could not, however, immediately go after Burse.  First, she had to take a few minutes to retrieve her dog from the recreational area.

After retrieving her dog, Ms. Jones proceeded to travel through the breezeway of Building 921.  Upon spotting Burse, she saw that he was being confronted by two men on the stairwell of Building 917.  She also saw a third man located at the top of the stairs.  She

_____

[4]The facts are taken from the state appellate court's opinion on direct appeal, *State v. Cowart*, 815 So.2d 275 (La. App. 5 Cir. 2002).

heard the men tell Mr. Burse that they knew he had some money, that they knew that he had gotten a check, and that they wanted him to give them the money.

Jones proceeded to watch the scene from a darkened corner of the breezeway, seeing one of the men try to go through Burse's pocket to get the money. Burse tried to walk up the stairs and fight the men off with his cane. Jones saw Burse hit the defendant on his shoulder, neck and head with the cane. Defendant then pulled out a gun and said, "Move out of the way, move out of the way, I'm about to get him." Defendant then shot Burse at least three times.

Following the shooting, the three men fled the scene and Burse attempted to crawl up the stairs, calling for his girlfriend as he did so. Ms. Jones described the area where the shooting occurred as being "well-lit", explaining that she was able to get a good look at the men who robbed and shot Burse. Ms. Jones testified that she was standing about 12 1/2 feet from where Mr. Burse was shot, but also admitted that she was not very good with measurements.

About 20 or 30 minutes after the shooting, Ms. Jones saw defendant in another area of the apartment complex. Defendant, who Jones described as being "fidgety," nervous and upset, asked Jones if she knew where his friend, Germaine, was. Ms. Jones, in response, asked defendant to go to the murder scene with her, but he refused. Ms. Jones admitted that she did not call the police about what she had seen because she was scared for herself and her two small children.

5

Deputy Wayne Williams, of the Jefferson Parish Sheriff's Office, was called to the scene of a homicide at 917 Beechgrove Boulevard in Westwego.  When he arrived on the scene, he observed a black male lying face down in the stairwell with blood circling the upper part of his body. He checked the victim's condition and called for an ambulance, which arrived very quickly.

Deputy Williams secured the scene and canvassed the area for any witnesses. While he found a gun at the scene, no one he spoke with had witnessed the shooting, though they heard the gun shots.

On July 31, 1999, Deputy Ralph Sacks also investigated the homicide at the Beechgrove Apartments.  When he arrived at the scene, he oversaw the collection of evidence.  The sheriff's office retrieved a holstered handgun, the victim's cane, the victim's back brace, the victim's baseball cap, a cigar, a cigarette lighter, keys, a pen, a bag, a bullet and several spent casings.  All of the evidence collected was submitted to the lab for DNA testing and blood typing; however, none of the evidence linked defendant to the homicide.

Deputy Sacks interviewed several persons who lived in the apartment complex, including Larrilynn Jones.  Jones informed Sacks that the defendant had a girlfriend who lived in the complex and that she had seen him around the crime scene.  Jones did not initially tell Sacks that she had witnessed the shooting.

On August 2, 2002, after speaking with Ms. Jones, Deputy Sacks located defendant and asked defendant to accompany him to the detective bureau.  Sacks reviewed

a waiver of rights form with defendant, and defendant signed the form indicating he understood his rights and wished to give a statement.[5]  In his statement, which was read to the jury at trial, the defendant indicated that, at the time of the shooting, he was at home at 6141 August Avenue where he lived with his Aunt Angelique Cole.  Defendant further stated that on Friday, July 30, 1999, he was at his girlfriend, Tashia Harper a/k/a Tashia Barber's apartment at Beechgrove from 10:00 a.m. until noon. Defendant said that his friend, William Shears, picked him up around noon in order to go shoot pool.  Defendant informed that he did not return to Beechgrove until Sunday at noon, at which time, he helped his girlfriend prepare for a baby shower.  According to defendant, it was not until the morning he gave his statement that he was first informed of the murder.

After interviewing defendant, Deputy Sacks brought him back to Tashia Harper's apartment, which Sacks searched with Ms. Harper's consent. Sacks did not find any contraband.

Deputy Sacks then attempted to corroborate defendant's statement.  Sacks spoke to defendant's aunt and uncle who could not corroborate defendant's claim of being at their house at the time of the shooting.  Deputy Sacks also spoke to William Shears who was unable to corroborate defendant's claim that he was not in the Beechgrove area from 12:00 (noon) on Friday until 12:00 (noon) on Sunday.

---

[5]Sacks was unable to produce the defendant's signed waiver of rights form at trial because his law enforcement vehicle was burglarized and the case file was stolen.

On August 5, 1999, Sacks interviewed Ms. Jones again because he had learned from her brother that she had witnessed the homicide.  Jones was terrified during the interview and stated that she did not give him all the information initially because she feared that she and her children would be killed in retaliation for talking to the police.

Ms. Jones then met with Deputy Sacks at the detective bureau.  Jones gave a statement wherein she described all three men as wearing black shirts, blue jeans and black tennis shoes.  She stated that the defendant was tall and had three teardrops under his eye, but that the other two men were of average height.

Ms. Jones also looked at a photographic lineup and identified defendant, who she had known for four years, as the man who shot Burse.  Ms. Jones stated that she was certain of that identification, and that the police officer did not offer any suggestion with respect to which photograph she should choose.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and

fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Hill*, 210 F.3d at 485. Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it `was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485, *quoting* 28 U.S.C.§ 2254(d)(2).

## IV.  ANALYSIS

### A.  Unconstitutional Grand Jury Composition

Petitioner claims that he is entitled to habeas corpus relief because the grand jury which indicted him was unconstitutionally selected. The State, in its response, submits

that the instant claim "has been procedurally defaulted", and therefore, should be denied.[6] Based upon the following, this court agrees.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.), *cert. denied*, 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995), *citing Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. *Amos*, 61 F.3d at 338 (citations omitted). As explained in *Coleman v. Thompson*, 501 U.S. 722, 730-31, 111 S.Ct. 2546, 2554, 115 L.Ed .2d 640 (1991): "In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity.... Without the rule, ... habeas would offer state prisoners whose custody was supported by independent and adequate state grounds ... means to undermine the State's interest in enforcing its laws."

In the instant matter, the state district court, addressing petitioner's grand jury challenge in connection with his post-conviction application, found that petitioner had waived his challenge due to his failure to raise it in a timely motion to quash prior to trial.

---

[6]*See* Federal rec., doc. # 5, p. 14.

Specifically, the district court held:

> Turning to specification of error number one, defendant seeks relief based on allegations that he was discriminated against during his indictment proceedings due to the alleged discriminatory selection of the grand jury foreman. Code of Criminal Procedure article 533 provides that objections to the grand jury are addressed by a motion to quash the indictment. Under Code of Criminal Procedure Art. 535[C] a motion to quash on the grounds asserted by the defendant must be filed in conformity with Code of Criminal Procedure Art. 521, which in turn provides it must be raised by pretrial motion. A motion to quash must be filed timely or it is deemed waived. [Citations omitted.][7]

The United States Fifth Circuit Court of Appeal has clearly provided that the above procedural bar "provides an 'adequate and independent' state law ground" for denying a constitutional challenge to the grand jury composition. *Williams v. Cain*, 125 F.3d 269, 276 (5th Cir. 1997). As such, federal habeas review is barred absent a showing of both "cause" for the default and "prejudice attributed thereto", or a demonstration that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Amos*, 61 F.3d at 338-39; *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Harris*, 489 U.S. at 262, 109 S.Ct. at 1043; *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed. 783 (1982).

In the instant matter, petitioner has not demonstrated the requisite cause and prejudice, as such, the instant claim is procedurally barred unless he can show that a fundamental miscarriage of justice would result. In order to establish a "fundamental

---

[7]Copy of the state district court's decision is contained in the State rec., vol. 5 of 10, tab 4.

miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001) (*citations omitted*).  Petitioner, in this instance, has made no such showing.  Accordingly, the instant claim is subject to dismissal.

### B.  Ineffective Assistance of Counsel

Petitioner claims that defense counsel was ineffective due to his failure to timely file a motion to quash the indictment based upon the unconstitutional selection of the grand jury which issued the indictment.  A claim of ineffective assistance of counsel is a mixed question of law and fact.  *Boyle  v. Johnson*, 93 F.3d 180, 187 (5th Cir. 1996).  As such, under the AEDPA, this court may grant habeas relief only upon a determination that the state court decision rested on an unreasonable application of clearly established Supreme Court law to the facts of the case.  *See Williams v. Taylor*, *supra*.

The seminal Supreme Court decision regarding ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), wherein the Court held that in order to prove that counsel was unconstitutionally ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim

without addressing the other prong.

Under the deficient performance prong of the *Strickland* test, "it is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed. 2d 180 (1993), *citing Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.   To prove prejudice under the *Strickland* standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

A review of the state court record reveals that petitioner raised the instant claim in connection with his post-conviction proceeding.  The state district court, citing the two-part *Strickland* test, determined that petitioner failed to satisfy the test since counsel's action, in not filing a pre-trial motion to quash, fell within the ambit of trial strategy.[8]  Further, as the State notes in its response, petitioner, in connection with both his state post-conviction proceeding and his federal habeas proceeding, fails to set forth the requisite statistical information to support the merits of his unconstitutional grand jury composition claim.[9]  As

---

[8] *See* State rec., vol. 5 of 10, tab 4 for copy of state district court's post-conviction opinion.

[9] In *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977), the Court explained that "in order to show that an equal protection violation has occurred in the context of grand jury selection, [one] must show that the procedure employed resulted in substantial underrepresentation of his race ...."  To make such a showing, a petitioner must demonstrate, by the submission of statistical data, "the degree of underrepresentation ... by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant

such, petitioner has clearly failed to make the prejudice showing required under *Strickland* to support an ineffectiveness claim.

### C.  Grand Jury Indictment was "Facially Defective"

Petitioner argues that his constitutional rights were violated because he was not properly informed of the charge lodged against him because he was charged via a short form indictment which did not set forth the essential elements of first degree murder.  In response, the State asserts that as with petitioner's complaint regarding the grand jury composition, the instant claim is procedurally barred.  The court agrees.

As noted earlier, a federal court generally will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the merits of the federal claim and adequate to support that judgment. *See Amos*, *supra*.  In order to fulfill the independence requirement, the last state court rendering a judgment in the case must "clearly and expressly" indicate that its judgment is independent of federal law and rests on a state procedural bar.  *Amos*, 61 F.3d at 338; *Harris*, 489 U.S. at 263, 109 S.Ct. at 1043.  When the last state court judgment does not indicate

---

period of time." *Id.  See*, *e.g.*, *Castaneda*, 430 U.S. at 495, 97 S.Ct. at 1280 (submitted statistical data reflecting that Mexican Americans comprised 79.1% of county's population, but only 39% of those summoned for grand jury service, deemed sufficient for purposes of establishing prima facie case of discrimination); *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967) (statistical data reflecting that African Americans comprised 27.1% of taxpayers, but only 9.1% "of those on the grand jury venire", deemed sufficient to make out prima facie case of discrimination). *Compare State v. Newman*, 879 So.2d 870, 882 (La. App. 4 Cir. 2004) (Newman failed to present any statistical evidence and therefore, failed to establish prima facie discrimination case).

whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last **reasoned** state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991) (emphasis added).

In the instant matter, the state district court issued the last reasoned opinion with respect to the pertinent issue. The district court specifically provided:

> In his final assignment of error, defendant alleges that his grand jury indictment was facially defective because it did not contain each essential element of the offense charged on its face. This claim is also denied because the proper procedural vehicle for alleging a defect in a grand jury indictment is via a Motion to Quash. A motion to quash must be filed timely or it is deemed waived.[10]

Based upon the court's explicitness, it is clear that the "independent" requirement has been satisfied.

The state procedural ground or requirement relied upon by the state district court in dismissing the instant claim must also be "adequate". An "adequate" ground is "one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *citing Amos*, 61 F.3d at 339. A state procedural ground enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.*, *citing*

---

[10]A copy of the district court's decision is contained in the State rec., vol. 5 of 10, tab 4.

*Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996).  The burden is on petitioner to establish that the state ground or requirement relied upon to deny his claim is not strictly and regularly followed.  *See Chester v. Cain*, 2001 WL 1231660, *6 (E.D. La. 2001),  *citing Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996) (additional citation omitted).[11]

In this case, petitioner has provided no evidence to suggest nor has he even argued that the pertinent state procedural requirement, pursuant to which the state district court dismissed the instant claim, has not been strictly or regularly followed.  Accordingly, the court finds that the procedural bar relied upon by the state district court to deny the instant claim constitutes an "independent" and "adequate" state law ground.  As such, federal habeas review is barred absent a showing of both cause for failing to comply with the state procedural requirement and actual prejudice if a federal review on the merits is not undertaken, or a demonstration that the federal court's failure to review the defaulted claim with result in a fundamental miscarriage of justice.  *See Amos*, *supra*.

As was the case with respect to his challenge to the grand jury composition, petitioner, with respect to his challenge to the sufficiency of the short form indictment, has

---

[11]Generally, a state fails to strictly and regularly apply a state procedural requirement when it clearly and unequivocally excuses a litigant's failure to comply with the requirement.  *See Chester*, *supra*.  Further, the state must fail to enforce compliance within the context of a situation similar to petitioner's wherein compliance was required.  *Id.*  "*De minimis* exceptions" will not prevent the State from relying on the state ground to dismiss a petitioner's claims; "'an occasional act of grace by a state court ... does not render the rule inadequate.'"  *Id.*, *quoting Martin*, 98 F.3d at 848 (citation omitted).

not demonstrated the requisite cause and prejudice.  Further, he has not made the requisite

showing of factual innocence for purposes of showing a "fundamental miscarriage of

justice."  *See Finley*, *supra*.  Accordingly, the instant claim is procedurally barred.

### D.  Trial Court Erred in Failing to Suppress Identification

Petitioner argues that Jones' identification of him in a photographic lineup

should have been suppressed because he was unable to dispute the suggestiveness of the

photographic lineup because the photographs composing the lineup could not be produced

at trial since the photographs, along with the rest of the case file, was stolen from Deputy

Sacks' police unit prior to trial.  In addressing this issue in connection with petitioner's direct

appeal, the Louisiana Fifth Circuit Court of Appeal examined both applicable state and

federal law.

A defendant who seeks to suppress an identification must prove both
that the identification itself was suggestive and that there was a likelihood of
misidentification as a result of the identification procedure. *State v. Prudholm,*
446 So.2d 729, 738 (La.1984); *State v. Payne,* 00-1171 (La.App. 5 Cir.
12/13/00), 777 So.2d 555, 558-559, *writ denied,* 01-118 (La.11/21/01), 802
So.2d 626.  Fairness is the standard of review for identification procedures,
and reliability is the linchpin in determining the admissibility of identification
testimony.  *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 2253, 53
L.Ed.2d 140 (1977).
A photographic lineup is considered suggestive if the photographs
display the defendant in such a manner that the witness's attention is unduly
focused on the defendant.  A lineup is also suggestive if there is not a
sufficient resemblance of characteristics and features of the persons in the
lineup. *State v. Biglane,* 99-111 (La.App. 5 Cir. 5/19/99), 738 So.2d 630, 634.
Even if the identification could be considered suggestive, it is the likelihood
of misidentification which violates due process, not merely the suggestive

identification procedure. *State v. Thibodeaux,* 98-1673 (La.9/8/99), 750 So.2d 916, 932, *cert. denied,* 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000).

In *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court set forth five factors to consider in determining if an identification is reliable:  1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and, 5) the time between the crime and the confrontation.  In evaluating the defendant's argument, the reviewing court may consider all pertinent evidence adduced at the trial, as well as at the hearing on the motion to suppress the identification.  *State v. Clennon,* 98-1370 (La.App. 5 Cir. 6/30/99), 738 So.2d 161, 164.  A trial court's determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion.  *Id.*

*Cowart*, 815 So.2d at 286-287.

Applying the above law to the applicable facts, the state appellate court reasoned:

In the instant case, Deputy Sacks testified at the suppression hearing that the photographic lineup was not available for viewing since it was stolen from his vehicle.  Therefore, we could not review the photographic lineup firsthand for suggestivity.  The record, however, reflects the following information.  Deputy Sacks showed Ms. Jones an array of six photographs and asked her if she recognized anyone.  Ms. Jones positively identified defendant.  Ms. Jones testified that Deputy Sacks did not tell her which man to identify.  Deputy Sacks testified that, in his career, he had compiled hundreds of photographic lineups, and that he always used the same standard of care in trying to get people who looked similar.  He stated that he was satisfied that the six photographs he chose in this case looked similar.  We cannot say that there is any indication that the lineup was suggestive.

Further, even if the identification was suggestive, it is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure.  Ms. Jones testified that she had known defendant for

four years and that she saw him shoot Burse.  She was able to get a good look at the men who robbed and shot Burse.  She described the defendant as being 6 feet, 3 inches, 180 or 190 pounds with a teardrop tattoo under his eye and two gold teeth on the side of his mouth.  Ms. Jones testified that she was 100 percent sure that defendant was the man who shot Mr. Burse.  Furthermore, when confronted with the photographic lineup two days after the homicide, she did not hesitate in identifying defendant as the perpetrator.  In applying the *Manson* factors to the facts of the instant case, we do not find any substantial likelihood of misidentification.

*Cowart*, 815 So.2d at 287-288.

This court finds that the above reasoning does not represent an unreasonable application of Supreme Court law to the facts of this case.  *See Williams*, *supra*.  Accordingly, the instant claim for habeas corpus relief is without merit.

### E.  Trial Court Erred in Allowing Deputy Sacks to Offer Inadmissible Hearsay Testimony

As a result of Jones' identification of petitioner as the person who shot Darien Burse, Deputy Sacks questioned petitioner.  In response, petitioner provided Sacks with a statement, informing that a friend, William Shears, picked him up from the Beechgrove apartments at noon on Friday, July 30, 1999, and that he did not return to the apartment complex until Sunday, August 1, 1999, at around noon, long after the shooting occurred.  Petitioner further informed that he was at his aunt and uncle's house at the time of the shooting.[12]  In an effort to corroborate petitioner's alibi, Deputy Sacks questioned Shears, as

---

[12] *See* discussion *supra* at p. 7.

well as petitioner's aunt and uncle.  These witnesses, who did not testify at trial, were unable to account for petitioner's whereabouts at the time of the shooting.  Shortly after receiving this information, Deputy Sacks arrested petitioner for the murder of Darien Burse.

At trial, when questioned with respect to his investigation of Darien Burse's murder,  Deputy Sacks offered testimony regarding what the above witnesses had informed him.  It is this testimony to which petitioner objects.  Petitioner claims that the trial court erred in allowing Deputy Sacks to inform jurors regarding what these witnesses had informed him, even if such testimony was related to Sacks' investigation of the murder at issue.

It is well-established that federal courts possess only limited authority to consider state evidentiary determinations in a state prisoner's habeas proceeding.  *Burgett v. Texas*, 389 U.S. 109, 113-14, 88 S.Ct. 258, 260-61, 19 L.Ed.2d 319 (1967).  As long as the evidentiary ruling is in accordance with state law and infringes no right protected under the Constitution, habeas relief is not warranted.  *Id.  See also Robinson v. Whitley*, 2 F.3d 562, 566 (5th Cir. 1993), *cert. denied*, 510 U.S. 1167, 114 S.Ct. 1197, 127 L.Ed.2d 546 (1994).

In examining the pertinent issue on direct appeal, the Louisiana Fifth Circuit Court of Appeal first reviewed applicable state law.

> In *State v. Dyer,* 00-1866 (La.App. 5 Cir. 4/25/01), 794 So.2d 1, this Court set forth the following law regarding hearsay:
>> Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.  La. C.E. arts. 801(A)(1) and 801(C).  Hearsay

evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802; *State v. Williams,* 98-1006 (La.App. 5 Cir.3/30/99), 735 So.2d 62, 75. A witness is generally competent to testify that a statement was made to him so long as no attempt is made to vouch for the credibility of its contents. *State v. Watson,* 449 So.2d 1321, 1328 (La.1984), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); *State v. Williams, supra.*

A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements are admitted not to prove the truth of the assertion, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the officer. *State v. Watson, supra* at 1328; *State v. Williams, supra.*

*State v. Dyer,* 794 So.2d at 12.

In addition, the Louisiana Supreme Court, in *State v. Broadway,* 96-2659 (La.10/19/99), 753 So.2d 801, *cert. denied,* 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000), stated:

Information about the course of a police investigation is not relevant to any essential elements of the charged crime, but such information may be useful to the prosecutor in "drawing the full picture" for the jury. However, the fact that an officer acted on information obtained during the investigation may not be used as an indirect method of bringing before the jury the substance of the out-of-court assertions of the defendant's guilt that would otherwise be barred by the hearsay rule. *State v. Wille,* [96-2659 La. 9] 559 So.2d 1321, 1331 (La.1990); *State v. Hearold,* 603 So.2d 731, 737 (La.1992). As this Court emphasized in *Hearold,* 603 So.2d at 737.

Absent some unique circumstances in which the explanation of purpose is probative evidence of a contested fact, such hearsay evidence should not be admitted under an "explanation" exception. The probative value of the mere fact that an out-of-court declaration was made is generally outweighed greatly by the likelihood that the jury will consider the statement for the truth of the matter asserted.

*State v. Broadway,* 753 So.2d at 809.

In *State v. Smith,* 97-1075 (La.App. 5 Cir. 4/15/98), 710 So.2d 1187,

cited by the State in its brief to support its position that the deputy's statements were admissible, defendant complained that the trial judge erred in permitting the State to elicit impermissible hearsay testimony from Detective Gurtner regarding gang membership. This Court found that the detective did not testify regarding the substance of anything that another person told him, but rather, he testified to the results of his investigation. As such, this Court held that the detective's testimony was not hearsay and thus the trial court did not err in admitting it. *State v. Smith,* 710 So.2d at 1190.

Similarly, in *Dyer, supra,* defendant contended that the trial court erred in allowing the State to present testimony from Detective Brunet that was inadmissible hearsay. Defendant argued that the trial court improperly allowed Detective Brunet to testify that defendant became a suspect in the armed robbery after Troy Slater implicated a man named "Black," who was caught with the robbery victim's stolen car. When the defense objected at trial on the basis of hearsay, the State argued that the testimony was not being offered for the truth of the words spoken because Mr. Slater was going to testify later to the substance of the statement. The trial judge overruled the objection. This Court held that Detective Brunet's testimony was not hearsay, as it was offered to explain the sequence of events which led to defendant's arrest, not to prove the truth of the assertion that defendant was an accomplice in the armed robbery. *State v. Dyer,* 794 So.2d at 12.

However, in *Broadway, supra,* defendant contended that the prosecutor presented hearsay testimony from two police officers that Kevan Brumfield implicated defendant as one of the principals in the murder. Brumfield did not testify at trial. The supreme court concluded that the statements were hearsay, and that the presentation of such constituted significant error. The supreme court held, after a thorough examination of all of the evidence, that the error regarding the hearsay was harmless beyond a reasonable doubt. *State v. Broadway,* 753 So.2d at 809-810, 818.

*Cowart*, 815 So.2d at 288-289 (footnote omitted).

Thereafter, the appellate court applied the above law to the applicable facts, reasoning:

Our review of the record indicates that the statements made by Deputy Sacks were admissible, because the statements were not admitted to prove the

truth of the assertion, but were necessary to explain the sequence of investigative events that lead to the defendant's arrest.  Deputy Sacks explained at trial that Ms. Jones told him she witnessed defendant shoot Burse.  When Deputy Sacks questioned defendant about the shooting, defendant stated that he was at his aunt and uncle's house at the time of the shooting, and that he had spent time with "William" during the pertinent time period.  Deputy Sacks was merely telling the jury that Ms. Jones' eyewitness testimony, coupled with the deputy's inability to confirm defendant's alibi, led the deputy to arrest defendant for Burse's homicide.

*Cowart*, 815 So.2d at 289.

The court's analysis, however, did not end following its conclusion that Sacks' testimony did not constitute inadmissible hearsay.  The court further reasoned:

However, even assuming that Deputy Sacks' statements were introduced to prove the truth of the matter spoken and, thus, constituted impermissible hearsay, the admission of such statements is subject to the harmless error analysis.  *State v. Ditcharo*, 98-1374 (La.App. 5 Cir. 7/27/99), 739 So.2d 957, *writ denied*, 99-2551 (La.2/18/00), 754 So.2d 964, citing *State v. Winfrey*, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, *writ denied*, 97-0264 (La.6/19/98), 719 So.2d 481.

The appropriate inquiry is then " 'whether the guilty verdict actually rendered in this trial was surely unattributable to the error.' "  *State v. Winfrey*, 703 So.2d at 78 (citations omitted).  "Factors to be considered in making this determination include:  (1) the importance of the witness' testimony; (2) the cumulative nature of the testimony; (3) the existence of corroborating or contradictory evidence regarding the major points of the testimony; (4) the extent of cross-examination permitted; and (5) the overall strength of the state's case."  *State v. Ditcharo*, 739 So.2d at 963-964, citing *State v. Balsar*, 625 So.2d 664, 666 (La.App. 5 Cir.1993), *cert. denied*, 93-2799 (La.1/13/94), 631 So.2d 1164.

In the instant case, although Deputy Sacks' testimony was not cumulative, the defense was allowed full cross-examination of Sacks on this information. Further, we find that, in light of Ms. Jones' eyewitness testimony against the defendant, the admission of Sacks' statement was

harmless error, if any, as the guilty verdict was surely unattributable to the
error.

*Cowart*, 815 So.2d at 289-290.

Clearly, the state appellate court's ruling with respect to Deputy Sacks'
alleged hearsay testimony is in accordance with applicable state law and impinges no
guarantee provided under the Constitution. As such, petitioner's claim for habeas corpus
relief is without merit.

### F.  Trial Court Erred in Failing to Allow Petitioner to Withdraw his Alibi Statement

La.C.Cr.P. art. 727(A) provides, in pertinent part, that a defendant must
provide the prosecution with "written notice of his intention to offer a defense of alibi."
La.C.Cr.P, art. 727(F), however, provides that a defendant may withdraw his intention to
offer an alibi defense, in which case, said defense is not admissible. In this case, the
defense, in accordance with Article 727(F), "withdrew its earlier ... notice of intent to rely
upon an alibi defense, and ... requested that [p]etitioner's alibi statement be deemed
inadmissible during trial." The trial court, however, denied the request. Petitioner argues
that the trial court's action in this regard, though not unconstitutional as the statement was
voluntarily provided, was nevertheless volative of "Louisiana's procedural rules",
specifically Article 727(F).[13]

---

[13]*See* Federal rec., doc. # 1, petitioner's supporting memorandum at p. 19.

In addressing this issue on direct appeal, the Louisiana Fifth Circuit Court of Appeal first examined the applicable facts.

> On June 19, 2000, in open court, defendant gave oral notice of his intent to offer an alibi defense. He stated that his alibi defense was based on his August 2, 1999 statement, and that the statement constituted his written notice of alibi. The court apparently accepted this argument.
>
> On November 29, 2000, however, defendant filed a "Motion to Exclude Statements Made in Connection with Intent [sic] Rely Upon Alibi." On that same date, defendant gave oral notice to the court of his intent to withdraw his alibi defense and moved to exclude his August 2, 1999 statement. The trial court ruled that it would allow the use of the statement because the statement was free and voluntary when given, and, moreover, at the time the statement was made, there was never any manifested intent to offer an alibi.

*Cowart*, 815 So.2d at 290.

Thereafter, the state appellate court reviewed the pertinent law.

> LSA-C.Cr.P. art. 727 provides as follows:
> > A. Upon written demand of the district attorney stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the district attorney a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi.
> > B. Within ten days thereafter, but in no event less than ten days before trial, unless the court otherwise directs, the district attorney shall serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and

25

any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.

C. If prior to or during trial, a party learns of an additional witness whose identity, if known, should have been included in the information furnished under Subsection A or B, the party shall promptly notify the other party or his attorney of the existence and identity of such additional witness.

D. Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in his own behalf.

E. For good cause shown, the court may grant an exception to any of the requirements of Subsections A through D of this Section.

F. Evidence of an intention to rely upon an alibi defense, later withdrawn, or of statements made in connection with such intention, is not admissible in any civil or criminal proceeding against the person who gave notice of the intention.

*Cowart*, 815 So.2d at 291.

Applying the above law to the applicable facts, the Louisiana Fifth Circuit reasoned:

In this case, defendant's statement was used during Deputy Sacks' testimony when the State asked Deputy Sacks whether he was able to corroborate defendant's statement. Although defendant strenuously argues that his statement constituted notice of intent of alibi, we do not find that defendant intended his statement to be a notice of intent of alibi statement at the time it was made. Further, at trial, the State did not make reference to defendant's prior asserted intention to use an alibi defense and the defendant did not use the statement as an alibi defense. We find that the trial court did not err in allowing the state to use defendant's August 2, 1999 statement at

26

trial.

*Cowart*, 815 So.2d at 291.

Petitioner admits that he is not challenging the admission of his alibi statement on a constitutional basis.  Rather, he is challenging the admission of his alibi statement on the basis that it constitutes a misapplication of state procedural law, specifically, La.C.Cr.P.art. 727.  Such a challenge, however, is not cognizable in a federal habeas corpus proceeding.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999) (quotation marks omitted); *see also Molo v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable in a federal habeas proceeding).  Accordingly, the instant claim is without merit.

### G.  Evidence Was Insufficient to Support First Degree Murder Conviction

Petitioner complains that insufficient evidence was submitted to support his conviction for first degree murder.  When conducting a post-AEDPA sufficiency of the evidence review, a federal court may grant relief only if it determines that the state court decision rested on an "unreasonable application" of clearly established Federal law, as determined by the Supreme Court, to the facts of the case.  *See* 28 U.S.C. § 2254 (d)(1).

In its analysis of petitioner's insufficiency of evidence claim, the Louisiana Fifth Circuit Court of Appeal first set forth the applicable Supreme Court law, along with

corresponding state law, stating:

> In reviewing the sufficiency of the evidence, due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under *Jackson,* a review of a criminal conviction record for sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.  A reviewing court is required to consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt.  The actual trier of fact is presumed to have acted rationally until it appears otherwise.  *State v. Mussall,* 523 So.2d 1305 (La.1988).

*Cowart*, 815 So.2d at 282-283.

> The state appellate court then examined the essential elements of the

applicable crime, asserting:

> In the present case, the defendant was indicted for first degree murder, because the victim was killed during the commission or attempted commission of an armed robbery.  The statutes relevant to this case are LSA-R.S. 14:30 A(1), LSA R.S. 14:64, and LSA-R.S. 14:27:
> LSA-R.S. 14:30 A(1) provides as follows:
> A. First degree murder is the killing of a human being:
> (1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of ... armed robbery.
>
> LSA-R.S. 14:64 defines armed robbery as the following:
> A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
>
> LSA-R.S. 14:27 defines attempt as follows:
> A. Any person who, having a specific intent to commit a

> crime, does or omits an act for the purpose of and tending
> directly toward the accomplishing of his object is guilty of an
> attempt to commit the offense intended; and it shall be
> immaterial whether, under the circumstances, he would have
> actually accomplished his purpose.
> B. Mere preparation to commit a crime shall not be sufficient
> to constitute an attempt; but lying in wait with a dangerous
> weapon with the intent to commit a crime, or searching for the
> intended victim with a dangerous weapon with the intent to
> commit a crime, shall be sufficient to constitute an attempt to
> commit the offense intended.
> C. An attempt is a separate but lesser grade of the intended
> crime; and any person may be convicted of an attempt to
> commit a crime, although it appears on the trial that the crime
> intended or attempted was actually perpetrated by such person
> in pursuance of such attempt.

*Cowart*, 815 So.2d at 283.

Thereafter, the Louisiana Fifth Circuit summarized the State's burden of

proof and examined the evidence presented at trial in the context of petitioner's argument

regarding why the evidence was insufficient, ultimately concluding, based upon the

standard set forth in *Jackson*, *supra*, that the State had satisfied its burden of proof.

> When the key issue is the defendant's identity as the perpetrator,
> rather than whether the crime was committed, the State is required to negate
> any reasonable probability of misidentification. *State v. Smith,* 430 So.2d
> 31, 45 (La.1983); *State v. Brady,* 414 So.2d 364, 365 (La.1982); *State v.
> Long,* 408 So.2d 1221, 1227 (La.1982).  However, positive identification by
> only one witness is sufficient to support a conviction.  *See State v. Mussall,*
> 523 So.2d 1305, 1311 (La.1988).
> A significant part of the State's case was the testimony of Larrilynn
> Jones.  Ms. Jones testified that, in the early morning hours of July 31, 1999,
> she saw Mr. Burse, a man that she knew, get out of his van and walk toward
> Building 917 of her apartment complex.  She wanted to talk to him so she

followed him.  As she got to the end of the corridor of Building 921, which was across from Building 917, she observed Burse being confronted by three men on the stairwell.

The men demanded money from Mr. Burse, and when he refused, one man started going through Burse's pockets.  As Burse started walking away from the man up the stairs, the defendant pulled out a gun, said, "Move out of the way, I'm about to get him," and then shot Mr. Burse.  She looked at photographic lineups and quickly identified defendant.  Ms. Jones testified that she was 100 percent sure that the defendant, a man that she had known for four years, was the man who shot Mr. Burse.

Defendant argues that the State has not presented sufficient evidence of his guilt because it has not presented physical evidence that links him to this crime.  Specifically, the blood found on the victim's cane that the victim allegedly used to hit defendant in the face tested negative for defendant's blood.  Further, fingerprint evidence from the casings and shells did not match defendant, and no other evidence had any serological value.  Finally, the police conducted two searches of defendant's girlfriend's apartment but did not retrieve the murder weapon, bullets, or clothing matching the description of that worn by the suspects.

Defendant is correct in that the only evidence against him is the eyewitness' testimony of Ms. Jones who admitted she initially lied to the police.  Despite the lack of physical evidence linking defendant to the crime, Ms. Jones testified that she witnessed defendant shoot Burse after defendant and his co-perpetrators robbed or attempted to rob Burse.  As was stated previously, positive identification by only one witness is sufficient to support a conviction. *Mussall, supra.*  Further, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the court, is sufficient to support a conviction.  *State v. Myers,* 98-899 (La.App. 5 Cir. 5/19/99), 737 So.2d 255.

Defendant also attacks inconsistencies in Ms. Jones' testimony and raises issues regarding her credibility.  In particular, the defendant argues that:  (1) the jury was unreasonable for relying on her testimony because she was a convicted felon and she had received psychiatric care for suicidal thoughts and depression; (2) she gave a statement to the police which she later admitted was not true, she admitted that she did not tell the police initially about witnessing the murder and where she was located at the time of the murder; (3) she perjured herself during motion hearings, testifying that she always told police the truth and then at trial admitting that she had lied initially; (4) her description of the clothing worn by the perpetrator

failed to match that of two other witnesses who observed the suspects fleeing; (5) the physical descriptions of the suspects seen fleeing the scene varied greatly from the physical description of the defendant, who is heavier and taller than the description given; (6) there was a discrepancy regarding how far Ms. Jones was standing from the crime scene; (7) Ms. Jones initially claimed that the light upstairs where the third unknown perpetrator was standing was on, but the light by the murderers was off, and then changed her story and said that the area where the murder occurred was well-lit, but the light where she was standing was off; (8) Ms. Jones claimed Burse hit the defendant in the face with a cane, yet defendant had no marks on his face when Deputy Sacks met with him two days after the crime; (9) Ms. Jones claimed that defendant and the co-perpetrators were yelling at Burse, yet Mr. Manning, who lived in the apartment close to where the murder occurred, did not hear any yelling; and (10) Ms. Jones initially claimed to have heard six shots, but then changed her story and said she only heard three shots.

At trial, Ms. Jones stated that she was scared for herself and her two small children, which is a rational explanation for not immediately telling the police that she had witnessed the murder. Further, it is clear from the record that Ms. Jones did not perjure herself when she stated that she was truthful with the police. She explained that she misunderstood defense counsel's reference to her statement. She thought that he was referring to her second statement and not the first statement when he asked her whether she had told Deputy Sacks the truth about the murder.

Although Ms. Jones description of the perpetrators' clothing differed from Ms. Stiles' description, the question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of the witnesses will not be re-weighed on appeal. *State v. Rowan,* 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. Additionally, Ms. Stiles admitted at trial that she could have been mistaken about the perpetrators' height and "everything else" because the perpetrators were far away when she saw them.

Defendant contends that there was a discrepancy regarding how far Ms. Jones was standing from the crime scene at the time of the shooting. However, Ms. Jones admitted that she was not good with measurements. Defendant argues that he had no marks on his face when Deputy Sacks met with him two days after the shooting, even though Ms. Jones testified that

the victim hit defendant in the face with his cane.  The evidence established that Burse, who was disabled and walked with a cane, was attempting to climb stairs when he was confronted by the perpetrators and shot.  It is reasonable to infer that Burse may have had difficulty swinging the cane at defendant from that angle.  Although Mr. Burse may have hit defendant, it is reasonable to infer that he may not have hit him hard enough to cause an injury.

Defendant contends that Mr. Manning did not hear voices other than Burse's at the time of the shooting; however, Manning stated that he did not hear anything because his television was very loud and his dog was barking at the time. Further, Ms. Jones may have changed her testimony regarding the number of shots she heard from six to three, but she was clear throughout the record that she was standing in an unlit portion of the breezeway looking into a well-lit potion of the breezeway during the confrontation.  With respect to Ms. Jones' conviction for theft and psychiatric treatment, the jury apparently still believed Ms. Jones' testimony despite those issues, which is well within its discretion.

Defendant also argues that defendant's actions were not consistent with having committed a murder.  Ms. Jones stated that she saw defendant about 20 to 30 minutes after the murder and he spoke with her.  He did not flee the scene, as one would expect of someone who had just committed a murder.  Additionally, he voluntarily went to the police station to give a statement, knowing that the police had previously gone to his girlfriend's house to look for him.  Defendant voluntarily consented to a search.  He claims that a suspect not investigated, an unknown black male in a white T-shirt who was observed immediately after the murder attempting to flag down cars on the Westbank Expressway, could have committed the murder.

Although defendant did not flee the scene and voluntarily went to the police station, gave a statement, and consented to a search, the jury obviously rejected those actions as a basis for finding him not guilty. Defendant claims that there was another possible suspect who was seen on the Westbank Expressway; however, there was no evidence introduced to support that contention.  In fact, when defense counsel asked Deputy Williams whether he was aware that a black male was seen flagging down cars on Highway 90, Deputy Williams responded that he was not.

Finally, defendant also argues that he took a polygraph exam and passed it, and Moses Beverly [who, along with petitioner, was indicted for the first degree murder of Darien Burse,] took one and failed it, and that the trial court would not allow that evidence at trial which prejudiced him.  The

Louisiana Supreme Court has long adhered to the view that lie detector or polygraph test results are inadmissible for any purpose at the trial of guilt or innocence in criminal cases.

The supreme court has made it clear that the rule excluding polygraph evidence "also operates to prevent any reference during trial to the fact that a witness has taken a polygraph examination with respect to the subject matter of his testimony."  *State v. Cosey,* 97-2020 (La.11/28/00), 779 So.2d 675, 685-686, *cert. denied,* 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001), citing *State v. Hocum,* 456 So.2d 602, 604 (La.1984); *State v. Tonubbee,* 420 So.2d 126, 132 (La.1982), *cert. denied,* 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983); *State v. Davis,* 407 So.2d 702, 706 (La.1981); *State v. Catanese,* 368 So.2d 975, 981 (La.1979).  Such evidence is prohibited because it "invites a probable inference by the jury that the witness passed the polygraph examination and therefore is testifying truthfully."  *Hocum,* 456 So.2d at 604-605.  Therefore, the trial court correctly ruled that no evidence of the polygraph results was admissible at trial.

We find it obvious from the verdict rendered that, despite inconsistencies and/or discrepancies in Ms. Jones' testimony, the jury believed all or certain aspects of her testimony that linked the defendant to the incident.  Moreover, the jury apparently rejected defendant's theory of the case of mistaken identity. Finally, we find that the record as a whole, when viewed in a light most favorable to the state, was sufficient to establish that defendant was the individual who murdered Darien Burse.

*Cowart*, 815 So.2d at 283-286.

Based upon the above, it is clear that the state court properly examined the elements necessary to prove first degree murder and determined, examining the evidence in a light most favorable to the prosecution, that all of the elements had been proven.  As such, the court finds that the Louisiana Fifth Circuit Court of Appeal did not unreasonably apply the applicable law enunciated by the Supreme Court in *Jackson, supra*.

Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Elton Cowart, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ___20th___ day of ___December___, 2006.


LOUIS MOORE, JR.
United States Magistrate Judge

34